UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA LUNDY,

        Plaintiff,                                      Hon. Wendell A. Miles

v.                                                  Case No. 1:06-CV-537

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

        The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 47 years of age at the time of the ALJ's decision. (Tr. 16). She successfully completed high school and worked previously as a maid, machine operator, and cashier. (Tr. 16, 107, 112, 121-27).

Plaintiff applied for benefits on November 25, 2002, alleging that she had been disabled since December 30, 2000, due to fibromyalgia and "stomach problems." (Tr. 76-78, 106, 428-31). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 35-72). On June 21, 2005, Plaintiff appeared before ALJ Barbara Welsch, with testimony being offered by Plaintiff, Plaintiff's husband, and vocational expert, James Lozer. (Tr. 441-85). In a written decision dated July 28, 2005, the ALJ determined that Plaintiff was not disabled. (Tr. 15-34). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 7-10). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## MEDICAL HISTORY

In early 1999, Plaintiff began experiencing pain in her right elbow and shoulder. (Tr. 211-12). On February 17, 1999, Plaintiff was examined by physical therapist, Bob Gorkiewicz. (Tr. 210). On examination Plaintiff exhibited "limited" range of motion in her cervical spine and "limited" strength in her right upper extremity. Gorkiewicz also observed the presence of "multiple parascapular trigger points." *Id.*

On August 12, 1999, Plaintiff participated in an MRI examination of her cervical spine, the results of which revealed a disc protrusion at C5-6, with no evidence of "cord compression or significant spinal stenosis." (Tr. 200).

On September 9, 1999, Plaintiff was examined by Dr. Karen Gilhooly. (Tr. 197-98). While the results of a physical examination were largely unremarkable, the doctor reported that Plaintiff "has a good 16 of 18 tender points to palpation." (Tr. 197-98). Plaintiff was diagnosed with fibromyalgia and instructed to continue participating in physical therapy. (Tr. 198).

On October 6, 1999, Plaintiff participated in an EMG examination and nerve conduction study, the results of which revealed "no electrodiagnostic abnormalities" or evidence of "acute cervical radiculopathy." (Tr. 190).

On May 10, 2002, Plaintiff participated in a consultive examination performed by Dr. Bradley Haas. (Tr. 291-95). Plaintiff reported that she was suffering from fibromyalgia. (Tr. 291). Plaintiff exhibited limited range of motion of the cervical and lumbar spine, but the results of a physical examination were otherwise unremarkable. (Tr. 292-94). The doctor reported that he observed "no fibromyalgia trigger point tenderness." (Tr. 292). He also observed no evidence of radiculopathy or peripheral nerve root pathology. (Tr. 294).

On May 28, 2002, Plaintiff was examined by Dr. Ruth Walkotten. (Tr. 309-10, 314). Plaintiff reported that she was suffering from muscle pain and stiffness "throughout her body," non-restorative sleep, and "prolonged fatigue" after performing exercise which she "once tolerated easily." (Tr. 309). Plaintiff reported that she can lift 5 pounds "on occasion," but cannot do so on a repetitive basis. (Tr. 310). She reported that she can stand for 15 minutes at one time and 1-2 hours total during the day. She reported that she can sit for only ten minutes and can walk for only five minutes. Plaintiff also reported that she experienced difficulty squatting, writing, reaching, pushing/pulling, and bending at the waist. *Id.* An examination revealed that "all eighteen trigger points for fibromyalgia were tender." (Tr. 309). Dr. Walkotten also reported that Plaintiff "fit the symptoms criteria from Chronic Fatigue & Immune Dysfunction Syndrome." *Id.* The doctor concluded that Plaintiff "is totally disabled and is unable to work for eight hours a day for five days a week." (Tr. 310).

On January 7, 2003, Plaintiff's husband completed a questionnaire regarding Plaintiff's activities. (Tr. 163-68). Plaintiff's husband reported that Plaintiff drives, but cannot do so for "long" distances due to pain. (Tr. 165). He reported that Plaintiff cooks, but that the pots and pans are too heavy for her to lift. (Tr. 165-67). He reported that "other than dusting," performing household chores causes Plaintiff to "really hurt." *Id.* Plaintiff's husband reported that Plaintiff is unable to sit for long periods of time. (Tr. 165-66). Plaintiff's responses to a similar questionnaire, completed the same day, were consistent with those provided by her husband. (Tr. 169-74).

On February 3, 2003, Plaintiff was examined by physical therapist, Michael Aenis. (Tr. 362-63). Plaintiff reported that she was experiencing "progressively worse" pain in her right shoulder which extended into her neck. (Tr. 362). Plaintiff described her pain as "a constant ache

5

with pinching and burning upon movement." An examination of Plaintiff's shoulder revealed tenderness and limited range of motion. *Id.* The therapist also observed evidence of impingement. (Tr. 362-63). Plaintiff was diagnosed with shoulder pain and fibromyalgia. (Tr. 363). Treatment notes dated March 17, 2003, reveal that Plaintiff's right shoulder "improved significantly" with physical therapy. (Tr. 360). The therapist noted that Plaintiff was still experiencing "quite a bit of tenderness in the lower cervical region, bilaterally." *Id.* On May 1, 2003, Mr. Aenis reported that Plaintiff "has met all" physical therapy treatment goals. (Tr. 395). He reported that Plaintiff is "able to perform most ADL's without increased pain" and "rests when [she] gets pain." *Id.*

X-rays of Plaintiff's right shoulder, taken on April 4, 2005, revealed "minor spur formation," but "no acute process." (Tr. 381). X-rays of Plaintiff's cervical spine, taken the same day, revealed no evidence of acute osseous abnormality. (Tr. 382).

On April 1, 2005, Plaintiff was examined by Dr. Mitchell Carey. (Tr. 400). Plaintiff reported that she was experiencing "a lot of pain" in her neck, back, and shoulders. *Id.* On June 2, 2005, Plaintiff reported to Dr. Carey that she was experiencing pain in her neck and shoulders, as well as numbness in her lower extremities and headaches. (Tr. 398). The doctor diagnosed Plaintiff with fibromyalgia, but noted that she "may be capable of light clerical" duties. *Id.*

On June 6, 2005, Plaintiff was examined by Dr. Walkotten. (Tr. 407-09). Plaintiff reported that carrying even five pounds causes pain in her back, arms, shoulders, and neck. (Tr. 408). Plaintiff reported that if she "rests right away" this pain "lasts 2-4 days," but that if she "continues to push [her]self the increased pain levels can last 3 months." Plaintiff reported that she is able to stand for 15-20 minutes, "if not in pain." When experiencing pain, Plaintiff reported that she can stand for only five minutes, after which she experiences muscle cramps in her legs. Plaintiff

reported that she can walk one-quarter mile, after which she must rest for 30-60 minutes. She reported that she can sit for 10-15 minutes. *Id.* As part of the examination, Plaintiff was instructed to lift one pounds weights from her lap to above her head. (Tr. 409). Plaintiff had to stop on the fourth attempt because she was experiencing "shooting pain" in her arms. *Id.* Dr. Walkotten concluded that Plaintiff "can not do anything on a consistent basis" and is "totally disabled from any work for eight hours a day for five days a week." (Tr. 407).

On June 9, 2005, Dr. Carey authored a letter regarding Plaintiff's condition. (Tr. 404). The doctor reported that he had been treating Plaintiff since 1984. He reported that Plaintiff was suffering from: (1) fibromyalgia; (2) bursitis of the right shoulder; and (3) chronic headaches. (Tr. 404). The doctor observed that Plaintiff experiences "the usual muscle aches in her neck, shoulders, back and legs typical of fibromyalgia." Dr. Carey also observed that Plaintiff experienced muscle pain which is "exacerbated by activity such as prolonged standing, walking or repetitive work." Dr. Carey reported that "the problem of chronic pain exacerbated by activity and fatigue are the two factors that prevent her from working a full-time 40 hour a week job." The doctor further reported that "the most [Plaintiff] could do would be some part-time sit-down employment." *Id.*

At the administrative hearing Plaintiff testified that she cooks "once in a while" and washes laundry. (Tr. 460, 475). She reported that she washes dishes "if there's not that many" dishes and shops for groceries "with help." (Tr. 461). Plaintiff testified that she "don't do none of the cleaning" because they hired "a maid that comes and does that." (Tr. 475). Plaintiff reported that she reads and watches television. (Tr. 461). She testified that she manages three different checking accounts for her family and their two businesses. (Tr. 461-62, 470). Plaintiff reported that

"[o]nce in a while" she will "pull a few weeds from [her] garden if they're not too hard to pull." (Tr. 460). Plaintiff reported that she can drive only 6-7 miles before her legs start to cramp. (Tr. 469).

Plaintiff testified that she occasionally accompanies her husband to business seminars. (Tr. 465-68). She reported that she "used to go all the time, to every one of them," but that in the "last couple years" had attended only three "major seminars" and "four of the smaller ones." (Tr. 467). Plaintiff testified that she used to participate in her husband's business ventures, but that she can no longer do so due to her pain. (Tr. 469). Plaintiff reported that when she attends seminars with her husband she lays around, watches television, goes to the pool, and walks around "a little bit." (Tr. 466).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

8

404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

B. **The ALJ's Decision**

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) degenerative joint disease; (2) arthralgias; (3) headaches; (4) obesity; (5) fibromyalgia; and (6) fatigue. (Tr. 26). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 26-28). The ALJ determined that Plaintiff was unable to perform her past relevant work as a machine operator and cashier. (Tr. 31). The ALJ further determined that even if Plaintiff was unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 31-32). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

1. **The ALJ's Decision is Not Supported by Substantial Evidence**

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light[2] and sedentary[3] work activities subject to the following limitations: (1) she can perform only routine repetitive tasks; (2) she cannot climb; and (3) she cannot perform work activities above shoulder level. (Tr. 30). A vocational expert testified that if limited to the extent recognized by the ALJ, Plaintiff could still perform her past relevant work as a machine operator and cashier. (Tr. 476). The vocational expert also testified that there existed in Michigan approximately 32,000 jobs at the light exertional level and approximately 17,000 jobs at the sedentary level which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 476-77). Accordingly, the ALJ determined that because Plaintiff retained the ability to perform her past relevant work she was not disabled. The ALJ also determined that even if Plaintiff was unable to perform her past relevant work she was nonetheless not disabled because there existed a significant number of jobs she could perform despite her limitations.

---

[2] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983).

[3] Sedentary work involves lifting "no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567. Furthermore, while sedentary work "is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.*

      a. The ALJ's determination regarding Plaintiff's RFC is not supported by substantial evidence

A claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996); *see also*, *Shaw v. Apfel*, 220 F.3d 937, 939 (8th Cir. 2000) (same); *Lanclos v. Apfel*, 2000 WL 1054893 at *3, n.3 (9th Cir., July 31, 2000) (same); *Moore v. Sullivan*, 895 F.2d 1065, 1069 (5th Cir. 1990) (to properly conclude that a claimant is capable of performing work requires "a determination that the claimant can *hold* whatever job he finds for a significant period of time").

Plaintiff's care providers have consistently reported that Plaintiff suffers from fibromyalgia and other severe impairments. (Tr. 198, 210, 309, 363, 398, 404). Moreover, as detailed above, Plaintiff's treating physicians have concluded that Plaintiff is impaired to an extent beyond that recognized by the ALJ. (Tr. 310, 404, 407). The ALJ disregarded these particular opinions, however, her rationale for doing so is not supported by substantial evidence.

First, as Plaintiff correctly observes, the ALJ has evaluated the opinions of her care providers by reference to inappropriate, as well as unpersuasive, criteria. The ALJ repeatedly discounts the medical findings and opinions of Plaintiff's care providers because such are allegedly based upon Plaintiff's "unverified self-serving statements." (Tr. 21, 24-26). For example, the ALJ disregards Dr. Walkotten's opinions regarding Plaintiff's limitations because "the doctor has no first hand knowledge of how long the claimant can sit, stand, walk, etc." (Tr. 21).

Practically every statement made by a patient to a medical professional is in some sense "self-serving." Recognition of such neither supports the ALJ's conclusions nor casts doubt upon the opinions of Plaintiff's care providers. Moreover, the ALJ's comments in this regard seem to overlook the "entirely subjective" nature of fibromyalgia and its symptoms. *See, e.g., Kurilla v. Barnhart*, 2005 WL 2704887 at *4 (E.D. Pa., Oct. 18, 2005) (further recognizing that fibromyalgia is an "elusive and mysterious" impairment which lacks "both a clear etiology and objective diagnostic testing capable of verifying the legitimacy of accompanying symptoms") (citations omitted). It hardly seems appropriate to fault a medical professional for relying on a patient's subjective allegations when evaluating and assessing an impairment that is "entirely subjective" in nature and is not amenable to objective diagnostic testing.

While Plaintiff's subjective allegations may be "unverified," none of Plaintiff's care providers have called into doubt the veracity of Plaintiff's subjective complaints. Plaintiff's subjective allegations are consistent with the activity questionnaires completed by Plaintiff and her husband, as well as the testimony provided by Plaintiff and her husband at the administrative hearing. While the ALJ asserts that Plaintiff's reported activities are inconsistent with her subjective complaints, specifically her allegedly "extensive travel" activities, the Court finds that the ALJ's conclusion in this regard is not supported by substantial evidence.

As previously noted, Plaintiff testified that she occasionally accompanies her husband to business seminars. She also testified that while she used to participate in her husband's business ventures, she is no longer able to do so. Plaintiff reported that while she "used to go all the time, to every one of" her husband's seminars, in the "last couple years" she has attended only a few such events. Furthermore, Plaintiff reported that even when she is able to attend a seminar with her

husband she simply lies around, watches television, goes to the pool, or walks around "a little bit." While this evidence certainly reveals that Plaintiff is neither bed-ridden nor house-bound, such is not inconsistent with a diagnosis of fibromyalgia as well as Plaintiff's subjective allegations and reported activities.

As for the ALJ's comment that Dr. Walkotten lacks "first hand knowledge" of Plaintiff's ability to sit, stand, or walk, such is similarly unpersuasive. Using the ALJ's standard, the only way that a medical professional would be able to render an acceptable opinion regarding an individual's ability to sit, stand, or walk during an 8-hour workday would be for the care provider to actually follow the individual around for 8 hours. The absurdity of such should be self-apparent.

The ALJ also disregarded the opinions of Plaintiff's long-time treating physician, Dr. Carey, on the grounds that the doctor "seems to be parroting information the representative [Plaintiff's attorney] has asked Dr. Carey to state." (Tr. 26). The ALJ also stated that "Dr. Carey gives no indication he knows of the claimant's daily activities." As these quotes evidence, the ALJ discounted Dr. Carey's opinions based on unfounded assumptions as to what the doctor may or may not have known regarding Plaintiff's activities, as well as what the doctor "seemed" to be doing. Such unfounded speculation and negative inference are not appropriate bases on which to evaluate a medical professional's opinion. *See* 20 C.F.R. § 404.1527(d).

In support of her decision to discount Dr. Carey's opinions, the ALJ also observed that Plaintiff's attorney "has apparently had ex parte communications with the doctor and has not furnished the undersigned with what information he presented to Dr. Carey when Dr. Carey was asked to make conclusions about the claimant's ability to work; therefore, it is unknown for what purpose Dr. Carey was making the statements." (Tr. 26). The Court is quite puzzled by this

statement. As Plaintiff correctly observes, it is certainly difficult (if not impossible) for an attorney to adequately represent his client without talking with his client's care providers. The ALJ cites to no authority for the proposition that counsel's conduct in this regard was in any way improper or serves to taint the opinions subsequently expressed by Dr. Carey.

In sum, the ALJ's RFC determination is not supported by substantial evidence. Plaintiff's care providers have consistently reported that Plaintiff is impaired to an extent beyond that recognized by the ALJ. This conclusion is supported by the medical evidence of record, as well as Plaintiff's reported activities. Moreover, the ALJ's reasons for discounting the opinions expressed by Plaintiff's care providers are not supported by substantial evidence.

As noted above, the vocational expert testified that based on Plaintiff's RFC she could perform her past relevant work as a cashier and machine operator. The vocational expert further testified that even if Plaintiff was unable to perform her past relevant work there nonetheless existed a significant number of jobs which Plaintiff could perform consistent with her RFC. However, the ALJ's RFC determination is not sufficiently supported by the evidence of record. In short, therefore, the hypothetical questions, the response to which the ALJ relied upon to support her decision, was based upon an improper RFC determination. Accordingly, the ALJ's conclusion that there exists a significant number of jobs which Plaintiff can perform despite her limitations, is supported by less than substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments).

b.  Evidence of Plaintiff's Disability is not Compelling

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of her disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling).  While the ALJ's decision fails to comply with the relevant legal standard, there does not exist *compelling* evidence that Plaintiff is disabled.  The Court recommends, therefore, that the Commissioner's decision be reversed and this matter remanded for further factual findings, including but not necessarily limited to, a determination of Plaintiff's RFC and whether there exist a significant number of jobs which Plaintiff can perform consistent with such.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision does not conform to the proper legal standards and is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure

to file objections within the specified time waives the right to appeal the District Court's order. *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date:  August 17, 2007                         /s/ Ellen S. Carmody
                                                          ELLEN S. CARMODY
                                                          United States Magistrate Judge