UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA LUNDY,

    Plaintiff,

                                                                     Case No. 1:06-cv-537

v

                                                                     Hon. Wendell A. Miles

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## ORDER ON DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Debra Lundy brought this action challenging the decision of the Commissioner of Social Security ("the Commissioner") denying her claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act. On August 17, 2007, United States Magistrate Judge Ellen S. Carmody issued a Report and Recommendation ("R & R") recommending that the Commissioner's decision be reversed and that the matter be remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g). The Commissioner has filed objections to the R & R, to which the plaintiff has responded.

The court, having made a *de novo* review upon the record of those portions of the R & R to which specific objection has been made, rejects the conclusion reached by the Magistrate Judge and instead concludes, for the reasons to follow, that the Commissioner's decision must be affirmed.

**Discussion**

Although the court's standard of review for a magistrate judge's R & R is de novo when objections are made to the R & R, see 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b), the court's review of a final decision by the Commissioner of Social Security is limited to whether there is substantial evidence in the record to support the factual findings of the Administrative Law Judge ("ALJ").  See Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997).  In its review, this court may not try the case de novo, nor resolve conflicts in the evidence, nor make credibility determinations.  Walters v. Commissioner of Social Security, 127 F.3d 525, 528 (6th Cir. 1997).  "The decision of an ALJ is not subject to reversal even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ."  Key, 109 F.3d at 273.  Here, the court finds that there is substantial evidence in the record to support the ALJ's decision.

The Magistrate Judge concluded that the ALJ's determination of plaintiff's residual functional capacity is not supported by substantial evidence because (1) plaintiff's care providers have consistently reported that plaintiff is impaired to an extent beyond that recognized by the ALJ, (2) the opinions of plaintiff's care providers are supported by the medical evidence of record, as well as plaintiff's reported activities, and (3) the ALJ's reasons for discounting the opinions expressed by plaintiff's care providers are not supported by substantial evidence. R & R at 14.  In his objections to the R & R, the Commissioner argues that contrary to the Magistrate Judge's conclusion, the ALJ gave good reasons for giving less weight to the disability

opinions of plaintiff's doctors Carey and Walkotten.

The Magistrate Judge noted that "Plaintiff's care providers have consistently reported that Plaintiff suffers from fibromyalgia and other severe impairments."  R & R at 11.  The six citations to the record listed as support of this statement include a February, 1999 evaluation performed by a physical therapist; a February, 2003 progress note of another physical therapist; a letter documenting an evaluation of plaintiff performed by Dr. Karen Gilhooly in September, 1999; another letter documenting an evaluation performed by Dr. Ruth Walkotten in May, 2002; a progress note written by Dr. Mitchell Carey on June 2, 2005; and a "Statement of Treating Family Physician" signed by Dr. Carey dated June 9, 2005.  (Tr. 198, 210, 309, 363, 398, 404).  The physical therapists are not physicians, even though they may have treated plaintiff for her complaints.  In addition, of the three doctors whose records are cited, only Dr. Carey was a treating physician; Drs. Gilhooly and Walkotten were only consulting physicians.[1]

"Generally, the opinions of treating physicians are given substantial, if not controlling, deference."  Warner v. Commissioner of Social Security, 375 F.3d 387, 390 (6th Cir. 2004).  The Magistrate Judge states that "Plaintiff's treating physicians have concluded that Plaintiff is impaired to an extent beyond that recognized by the ALJ."  R & R at 11.  However, the three citations to the record listed as support for this statement include Dr. Walkotten's May, 2002

---

[1] Dr. Gilhooly's report indicates that she saw plaintiff on reference from a relative.  Tr. 197.  Dr. Gilhooly did not schedule plaintiff for a follow-up visit.  Tr. 198.

At two points in her decision, the ALJ refers to Dr. Walkotten as an examining doctor to whom the plaintiff was sent by the State of Michigan to determine eligibility for disability benefits.  Tr. 21, 24.  Although Dr. Walkotten was indeed only an examining physician and not a treating physician, Tr. 314, 407, the source for the ALJ's statement that plaintiff was sent to this doctor by the State is not clear.

report as well as a second report authored by her after her second evaluation of plaintiff on June 6, 2005, in addition to Dr. Carey's June 9, 2005 "Statement of Treating Physician." (Tr. 310, 404, 407) Once again, as indicated in the paragraph above, Dr. Walkotten is not a treating physician, although she did see plaintiff on two separate occasions in 2002 and 2005.

The Commissioner argues that the ALJ gave good reasons for giving less weight to the disability opinions of both Drs. Carey and Walkotten that plaintiff was unable to work. The ALJ did in fact give a number of reasons for declining to give controlling weight to the opinions of these physicians regarding the extent of plaintiff's limitations. These include but are not limited to the following:

1. Just days before he concluded that plaintiff could not work full-time, Tr. 404, Dr. Carey had stated in his progress notes that although plaintiff might be unable to do physical work, she may be capable of light clerical work. Tr. 398. Despite little evidence of treatment for her alleged impairments during 2004 and until April, 2005, plaintiff appears to have seen Drs. Carey and Walkotten in June, 2005 for the primary purpose of obtaining statements from them in order to obtain disability benefits.
2. Plaintiff's level of activity exceeds that reported to Drs. Carey and Walkotten. Specifically, plaintiff testified at the administrative hearing that she helped her husband with his home-based business and accompanied him on out-of-state business trips.[2]

---

[2]Plaintiff gave her hearing testimony on June 21, 2005. Tr. 441. She testified that during the previous year – 2004 – she had accompanied her husband on three "major" business trips to New York, North Carolina, and Florida. Tr. 467. This was in addition to four "smaller" one-day business-related trips plaintiff took with her husband during 2005. Tr. 466-467. Plaintiff, however, admitted to having gone on a five-day trip with her husband to Louisville, Kentucky – with intermittent stops at her mother's home – not long before the hearing. Tr. 465. This testimony does not support the Magistrate Judge's observation that plaintiff had accompanied her husband on "only a few" trips. R & R at 12.

Plaintiff also testified that she used a computer to maintain two of her husband's business checking accounts, in addition to her own account. Tr. 461-462.

4

      3.      Plaintiff's daily activities, including providing for her own personal care and performing certain household chores, were inconsistent with her statements to physicians regarding the extent of her physical limitations.

      4.      The objective medical findings (or lack thereof) – rather than Drs. Carey's and Walkotten's subjective conclusions – were more in line with plaintiff's hearing testimony describing her physical activities.

"'The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician.'" Warner, 375 F.3d at 391 (citation omitted). The ALJ gave specific reasons for not affording controlling weight to the opinions of Drs. Carey and Walkotten that plaintiff was unable to work, even though Dr. Carey was the only treating physician. A procedural requirement associated with the treating physician rule is that the ALJ must provide "good reasons" for discounting any treating physicians' opinions. Rogers v. Commissioner of Social Security, 486 F.3d 234, 242 (6th Cir. 2007). Here, the ALJ justifiably considered such factors as the plaintiff's ability to conduct daily life activities in the face of a claim of disabling pain. Warner, 375 F.3d at 392. The ALJ's decision shows a familiarity with the regulatory framework, and her reasons for discrediting not only Dr. Carey's opinion but also Dr. Walkotten's are both good and clear.

The Magistrate Judge was critical of the ALJ in this case for citing to plaintiff's "self-serving" statements to physicians and other care providers, who appear to have credited many of plaintiff's complaints. Perhaps the ALJ should have used less judgmental language; referring to plaintiff's complaints as "subjective" probably would have sufficed. The Magistrate Judge assesses that the ALJ might have overlooked the "entirely subjective" nature of fibromyalgia and its symptoms. See Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996) ("Its cause or causes are

5

unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia"); see also Rogers, 486 F.3d at 243 ("unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs"). "The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness," and "multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch." Sarchet, 78 F.3d at 306. "All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch." Id. The process of diagnosing fibromyalgia also includes ruling out other possible conditions through objective medical and clinical trials. Rogers, 486 F.3d at 244.

      Although plaintiff claims to have suffered from the fibromyalgia since as early as 1995, as the ALJ noted, Dr. Bradley Haas, who examined plaintiff on May 10, 2002, found no fibromyalgia trigger point tenderness. Tr. 292, 294. Yet, when Dr. Walkotten examined plaintiff on May 28, 2002, plaintiff curiously exhibited 18 tender trigger points. Tr. 309. Although it is possible that plaintiff was merely having a good day when she saw Dr. Haas, it seems more likely that during the 18 days before she saw Dr. Walkotten, plaintiff had the opportunity to become familiar with the required manifestations of fibromyalgia.[3]

---

[3] Plaintiff told Dr. Walkotten that her fibromyalgia was diagnosed in 1995. Tr. 302, 314. Although at various other times plaintiff reported pain symptoms beginning in 1996, 1997, and

In any event, the ALJ did not entirely discount plaintiff's complaints.  She did find that plaintiff suffers from severe impairments that can reasonably cause pain.  Tr. 28.  However, although some persons may have such a severe case of fibromyalgia that they are totally disabled from working, "most do not and the question is whether [the claimant] is one of the minority."  Sarchet, 78 F.3d at 307.  "[T]olerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant."  Villarreal v. Secretary of Health and Human Servs., 818 F.2d 461, 463 (6th Cir. 1987).  The ALJ found that plaintiff's statements "regarding the degree of her symptoms and resulting limitations are not credible when compared to the objective medical evidence, treatment protocols and her actual activities."  Tr. 28.  "[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ."  Siterlet v. Secretary of Health & Human Servs., 823 F.2d 918, 920 (6th Cir.1987).  The ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly.  E.g., Gaffney v. Bowen, 825 F.3d 98, 101 (6th Cir. 1987).  Based on the record in this case, the court finds no reason to deviate from the general rule of according deference to the ALJ's credibility determinations.

The ALJ found that plaintiff suffered from serious impairments, and she accommodated for limitations resulting from the impairments – including those arising from plaintiff's subjective complaints of pain –  in her residual functional capacity assessment.  Tr. 30.  The court concludes that the ALJ's credibility determination was supported by substantial evidence.

---

1998,  Tr. 133, 140, 169, 291, it is unclear from the record who made the original diagnosis.  It may have been Dr. Gilhooly, who examined plaintiff in September, 1999.  Tr. 197-198, 201.

7

### **Conclusion**

The court rejects the conclusion reached by the Magistrate Judge and instead concludes that the decision of the Commissioner denying benefits should be AFFIRMED.

Entered this 21st day of September, 2007.

      /s/ Wendell A. Miles
Wendell A. Miles, Senior Judge